IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHRISTINE CLAYTON,

       Plaintiff,

vs.                                                                  No. CIV 09-0188 JB/ACT

VANGUARD CAR RENTAL U.S.A., INC.,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Compel Defendant to Respond to Plaintiff's Second Request for Prosecution, filed August 11, 2009 (Doc. 40). The Court held a hearing on November 18, 2009. The primary issues are: (i) whether the Court should compel the production of documents prepared by outside counsel hired by Defendant Vanguard Car Rental U.S.A., Inc.'s for its position statement to the Equal Employment Opportunity Commission ("EEOC") responding to Plaintiff Christine Clayton's charge of employment discrimination; (ii) whether the Court should compel the production of corporate counsel's handwritten notes taken during discussions regarding the drafting of a Separation Agreement for Clayton, in lieu of termination; and (iii) whether the Court should compel production of nationwide EEO-1 reports[1] that Vanguard filed. Because the Court finds that the documents which outside counsel prepared (documents identified by Bates-numbers VCR 8-10, 151, 243-253) and which corporate counsel prepared (VCR 416-417) are documents that privilege is intended to protect, the Court will deny Clayton's motion to compel as to those documents. Because the Court has previously decided that

---

[1] All private employers subject to Title VII of the Civil Rights Act of 1964 are required to annually file Employer Information Reports, otherwise known as EEO-1 reports, with the United States EEOC's EEO-1 Joint Reporting Committee.

Vanguard should produce the EEO-1 documents within the scope of the southwest region and within a five-year period, the Court will grant Clayton's motion in part and deny it in part with respect to the third category of documents (VCR 1523-1527).

## PROCEDURAL BACKGROUND

In response to Plaintiff's First Interrogatories and Requests for Production, Vanguard produced to Clayton a compact disc which included documents with "bookmarks" that identified specific Bates-stamped documents by subject heading. See Motion at 2. When Clayton's counsel attempted to open certain bookmark documents, however, there was no document to open. On July 20, 2009, Clayton's counsel sent a letter to Vanguard's counsel, asking for production of the missing documents identified by bookmarks as "Company Comparison Salaries," "Comparison of Ms Clayton's Compensation to Male and Female Averages," and "Spreadsheet of General Manager Compensation."

On July 21, 2009, Vanguard's counsel responded by electronic mail that it had inadvertently included the bookmarks in the production and that Vanguard was in the process of collecting data responsive to the request for comparative compensation as set forth in Requests for Production Nos. 4 and 7. See Motion at 3. Based on this response, Clayton's counsel submitted Plaintiff's Second Request for Production, requesting the documents associated with the bookmarks that Vanguard's counsel inadvertently produced to Clayton. Vanguard objected to the request, stating that it seeks documents protected and privileged as attorney-client communications, materials generated in anticipation of and during litigation, and attorney work-product. See Defendant's Responses to Plaintiff's Second Requests for Production, filed September 11, 2009 (Doc. 40-5). The response also attached a privilege log. Clayton now moves the Court to compel production of the documents identified by the bookmarks and by Bates-numbers VCR 8-10, 151, 243-253, 416-417, and

1523-1527. Clayton contends that the assertions of attorney-client privilege and work-product immunity do not apply, nor were they timely asserted.

In Defendant's Response in Opposition to Plaintiff's Motion to Compel Defendant to Respond to Plaintiff's Second Request for Production, filed September 28, 2009 (Doc. 51) ("Response"), Vanguard argues that it timely asserted both the work-product doctrine and the attorney-client privilege. Vanguard argues that VCR 8-10, 151, and 243-253 are compilations of general-manager statistics prepared by outside counsel, John P. Hasman of the Lowenbaum Partnership L.L.C. in Clayton, Missouri, whom Vanguard retained to evaluate the EEOC charge of discrimination that Clayton filed on April 4, 2008, and whose work was used to prepare Vanguard's responding position statement to the EEOC. See Affidavit of John P. Hasman, Esq. (executed September 25, 2009), filed September 28, 2009 (Doc. 51-3). The documents also include Mr. Hasman's working papers. Moreover, Vanguard contends that this information is unnecessary, as Vanguard has already produced a spreadsheet to Clayton which, though in a different format, contains all the same data as what is compiled in VCR 8-10, 151, and 243-253, with the exception of the personal calculations, summaries, and emphasis of particular categories and individuals that were made by Mr. Hasman, which Vanguard contends is protected as work product. See Response at 7. Vanguard contends it has revised its privilege log to more comprehensively describe the nature of these documents, without revealing the privileged or protected information itself. See Response at 8. Vanguard also contends that VCR 416-417 are handwritten notes of Jennifer McCoy, a corporate counsel attorney, which she took during communications with Clayton's former direct supervisor, Mike Filomena, in connection to drafting a Separation Agreement to propose to Clayton. Vanguard argues that the notes were not taken as a direct record, but rather as her own personal notes. See Response at 8-9. Finally, Vanguard argues that VCR 1523-1527 are EEO-1 reports from

nationwide, which are beyond the scope of relevant documents for Clayton's case.  Vanguard requests that the Court deny Clayton's motion to compel.

In Clayton's reply, she argues that the documents in VCR 8-10, 151, and 243-253 are not protected work product, but rather a compilation of facts.  See Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Compel (Doc. 40) at 2, filed October 15, 2009 (Doc. 66)("Reply").  She argues that VCR 416-417 are notes regarding her termination and are thus relevant.  She also contends that the EEO-1 reports are relevant within the broad scope of rule 26(b)(1) of the Federal Rules of Civil Procedure.  See Reply at 2.

At the hearing, the Court suggested that the parties could produce the documents at issue to the Court in camera.  Trent Howell, Vanguard's attorney, argued that Vanguard has given specific bases for the assertion of privilege through both affidavit and privilege log, and if there are questions beyond the affidavits, Vanguard would be willing to submit the documents for review in camera.  Edward Hollington, Clayton's attorney, argued that, with regard to VCR 8-10, 151, and 243-253, the compiling of facts is not enough to trigger the privilege.  Mr. Hollington suggested that any portion that comprises Mr. Hasman's notes could be redacted, but that the statistics compiled are facts that the privilege does not protect.  Mr. Howell argued that the charts in VCR 8-10, 151, and 243-253 represent documents likened to draft trial exhibits.  Mr. Howell clarified that Vanguard is not contending that the underlying data is protected, but rather, it's the selection of particular comparators in those particular charts that represents protected work product and the compilation of the statistics into a presentation.  Mr. Hollington also contended that Ms. McCoy's handwritten notes in VCR 416-417 is comparable to scrivener work showing instructions to the attorney and does not trigger the protection of the work-product doctrine.  Mr. Howell argues that the handwritten notes in VCR 416-417 represent the attorney's own comments and remarks for herself, and not a

record of a conversation with her client.

With regard to the EEO-1 reports, Mr. Howell states that, to the extent that there are southwest regional reports for the five-year period that are responsive to the request, Vanguard is willing to produce those EEO-1 reports.

## RELEVANT LAW REGARDING DISCOVERY

The scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense," and information sought is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). See Schlagenhauf v. Holder, 379 U.S. 104, 114-15 (1964)("The deposition-discovery rules are to be accorded a broad and liberal treatment."); Sanchez v. Matta, 229 F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information."). The federal discovery rules reflect the courts' and Congress' recognition that "mutual knowledge of all relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947). As a result, these rules "contemplate[] discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case." Anaya v. CBS Broadcasting, Inc., 251 F.R.D. 645, 649-650 (D.N.M. 2007)(Browning, J.).

It is the burden of the party invoking the attorney-client privilege to establish the applicability of that privilege, which is "narrowly construed." Foster v. Hill, 188 F.3d 1259, 1264 (10th Cir. 1999). It is therefore insufficient for a party to assert, without more, that documents sought are privileged. See Fed. Deposit Ins. Corp. v. United Pac. Ins. Co., 152 F.3d 1266, 1276 n. 6 (10th Cir. 1998). The same rule is true for assertions that the work-product doctrine protects documents. See Desmare v. State of New Mexico, No. Civ. 07-199 JB/RHS, 2007 U.S. Dist. LEXIS

97074, at * 11 (D.N.M. Aug. 10, 2007)(citing Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995)).

Rule 26(b)(5) requires that a party who withholds information on the grounds that it is privileged or subject to protection as trial-preparation material must identify, in some detail, which information is privileged and describe it in a way that allows the opposing party to ascertain the applicability of the privilege. It is "well settled that failure to produce a privilege log . . . may be deemed waiver of the privilege." Anaya v. CBS Broadcasting, Inc., 251 F.R.D. 645, 651 (D.N.M. 2007)(Browning, J.). See 1993 Comm. Note to Rule 26(b)(5)(explaining that to withhold material without providing the information required may be viewed as a waiver of the privilege or protection). Although "minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances bear against finding a waiver," the absence of evidence that the violating party ever produced a privilege log may justify a waiver of the privilege. See In re TJX Cos., Inc. Fair and Accurate Credit Transactions Act (FACTA) Litig., No. 07-1853, 2008 U.S. Dist. LEXIS 46365, at *13-16 (D. Kan. June 12, 2008).

To assert the attorney-client privilege, a party must establish a communication between a lawyer and his client "relate[s] to legal advice or strategy sought by the client." United States v. Johnston, 146 F.3d 785, 794 (10th Cir. 1998). Communications do not become privileged solely because they involve an attorney. See Motley v. Marathon Oil Co., 71 F.3d at 1550-51.

The work-product doctrine is based on the recognition that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Hickman v. Taylor, 329 U.S. 495, 510 (1947). "[T]he work product doctrine shelters the mental processes of the attorney, providing a privileged area within which an attorney can analyze and prepare his client's case." Citizens Progressive Alliance v. U.S. Bureau of Indian Affairs, 241

F. Supp. 2d 1342, 1358 (D.N.M. 2002)(citing United States v. Nobles, 422 U.S. 225, 238 (1975)). A blanket assertion of the work-product doctrine is insufficient to meet the burden of demonstrating that the doctrine applies and has not been waived. See Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995). For the work-product doctrine to apply, the asserting party must show that the documents or materials were prepared in anticipation of litigation by or for a party or that party's representative. See Fed. R. Civ. P. 26(b)(3).

## **ANALYSIS**

Clayton has moved the Court to compel the production of three categories of documents: (i) Mr. Hasman's documents (VCR 8-10, 151, and 243-253), which include compilations of general-manager statistics prepared for the purpose of preparing Vanguard's responding position statement to the EEOC and Mr. Hasman's work papers, which contain notations underscoring particular general-manager statistics, handwritten calculations, and personal reflections on the statistics; (ii) Ms. McCoy's documents (VCR 416-417), which include handwritten notes Ms. McCoy took during communications with Clayton's direct supervisor, Filomena, in connection with a request for Ms. McCoy to draft a Separation Agreement in lieu of terminating Clayton; and (iii) nationwide EEO-1 reports that Vanguard filed (VCR 1523-1527). Vanguard has asserted that the attorney-client privilege and work-product doctrine protect Mr. Hasman's and Ms. McCoy's documents and, because it has produced a privilege log describing the documents, the Court should not compel Vanguard to produce those documents. Vanguard further asserts that the EEO-1 documents requested are beyond the scope of documents that must be produced in this case. Because the Court finds that the documents requested in the first two categories (VCR 8-10, 151, 243-253 and VCR 416-417) are documents which the privilege is intended to protect, the Court will deny Clayton's motion to compel as to those documents. Because the Court has previously decided

that Vanguard should produce the EEO-1 documents within the scope of the southwest region and within a five-year period, the Court will grant Clayton's motion in part and deny it in part with respect to the third category of documents (VCR 1523-1527).

**I.     MR. HASMAN'S DOCUMENTS REFLECT THE MENTAL PROCESSES AND STRATEGIC DECISIONS OF AN ATTORNEY IN PREPARATION FOR HIS CLIENT'S CASE, AND THUS THE WORK-PRODUCT DOCTRINE PROTECTS THEM FROM DISCLOSURE.**

Clayton contends that the documents contained within VCR 8-10, 151, 243-253 represent a compilation of facts which the work-product doctrine does not protect, and asks the Court to compel Vanguard to produce these documents. Vanguard argues that it has already produced to Clayton the data within these documents. Vanguard also submits the Affidavit of John P. Hasman, Esq., the attorney who prepared and synthesized the information contained within VCR 8-10, 151, 243-253. According to Mr. Hasman, the documents are particular general-manager statistics which he found particularly important to Vanguard's case, his handwritten calculations, and his personal impressions as to which statistics might be emphasized in evaluating and responding to Clayton's claims against Vanguard. Vanguard has asserted that the work-product doctrine protects these documents as privileged.

The work-product doctrine is based on the recognition that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel," Hickman v. Taylor, 329 U.S. at 510, and "shelters the mental processes of the attorney, providing a privileged area within which an attorney can analyze and prepare his client's case," Citizens Progressive Alliance v. U.S. Bureau of Indian Affairs, 241 F. Supp. 2d at 1358. Rule 26(b)(3) requires the party asserting the work-product doctrine to show that the documents or materials were prepared in anticipation of litigation by or for a party or that party's representative.

Based on the information contained in Mr. Hasman's affidavit, the Court finds that the documents contained within the Bates-ranges VCR 8-10, 151, 243-253 are documents which rule 26(b)(3) is intended to protect. Mr. Hasman's strategic decisions regarding which general-manager statistics to use reflects the mental processes of an attorney working in preparation of his client's case. Specifically, these documents were prepared for Vanguard's position statement to the EEOC responding to Clayton's charge of employment discrimination. The Court finds that these documents have been sufficiently described in Vanguard's privilege log and will not compel Vanguard to produce them to Clayton.

## II. THE ATTORNEY-CLIENT PRIVILEGE PROTECTS MS. MCCOY'S NOTES TAKEN DURING HER CONVERSATION WITH CLAYTON'S DIRECT SUPERVISOR.

Clayton argues that the handwritten notes which Ms. McCoy took during her meeting with Clayton's direct supervisor, Filomena, are nothing more than directions from a corporate official for the preparation of a separation agreement, and thus the attorney-client privilege does not protect the notes. Vanguard submits the Affidavit of Jennifer McCoy, which states that the notes she took during the meeting were not a direct record of the conversation, but rather note points and considerations that she, as a lawyer, felt might be important for purposes of preparing a Separation Agreement, which was considered in lieu of terminating Clayton. Vanguard argues that the attorney-client privilege protects these notes from disclosure.

The attorney-client privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his or her capacity as a legal advisor." Desmare v. State of New Mexico, 2007 U.S. Dist. LEXIS 97074, at *8 (citing United States v. Phelan, 3 Fed. Appx. 716, 718 (10th Cir. 2001)). To assert the attorney-client privilege, a party must establish a communication between a lawyer and her client "relate[s] to legal advice or strategy

sought by the client." United States v. Johnston, 146 F.3d at 794. Communications do not become privileged solely because they involve an attorney. See Motley v. Marathon Oil Co., 71 F.3d at 1550-51.

The Supreme Court of the United States has held that the attorney-client privilege extends to notes taken by counsel during employee interviews. See Upjohn Co. v. United States, 449 U.S. 383, 397 (1981). "The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyers being fully informed by the client." Upjohn Co. v. United States, 449 U.S. at 389-90. "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Id. Attorney-client privilege protection also extends to "responses by employees to counsel's questions for the purpose of providing legal advice to the corporation." Wagoner v. Pfizer, Inc., No. 07-1229, 2008 U.S. Dist. LEXIS 24262, at *9 (D. Kan. Mar. 26, 2008)(citing Upjohn Co. v. United States, 449 U.S. at 397).

The Court finds that the notes that Ms. McCoy took during her meeting with Filomena are within the scope of protection that the attorney-client privilege affords. See Johnson v. Kraft Foods N. Amer., Inc., No. 05-2093, 2007 U.S. Dist. LEXIS 55403, at *4 (D. Kan. July 30, 2007) (holding that attorney-client privilege applies to handwritten notes by corporate counsel documenting a meeting between counsel and human resources staff for purpose of obtaining legal advice); FTC v. Digital Interactive Assocs., Inc., No. 95-754, 1997 U.S. Dist. LEXIS 3520, at *10 (holding that the attorney-client privilege protects from disclosure notes from a meeting between the FTC's attorneys and the FTC staff). The Court also finds that Vanguard has adequately described these documents in the privilege log as documents consisting of communications made in confidence for the primary purpose of obtaining legal advice. The Court, therefore, will not compel Vanguard to produce Ms.

McCoy's notes.

### III.   VANGUARD MUST PRODUCE ANY EEO-1 DOCUMENTS WITHIN THE SCOPE UPON WHICH THE PARTIES PREVIOUSLY AGREED.

Clayton requests that the Court compel Vanguard to produce nationwide EEO-1 reports identified by Bates-numbers VCR 1523-1527.  Clayton has already requested production of the EEO-1 reports in Plaintiff's First Request for Production Nos. 13 and 14, and agreed to limit the scope of the production of these reports to the southwest region and within a period of five years.  The Court, therefore, will not compel Vanguard to produce documents contained within the Bates-range VCR 1523-1527 that do not fall within the geographic and temporal scope upon which the parties have previously agreed.  To the extent that there are documents relevant in scope within the identified Bates-range, the Court will require Vanguard to produce those reports.

**IT IS ORDERED** that Plaintiff's Motion to Compel Defendant to Respond to Plaintiff's Second Request for Prosecution is granted in part and denied in part as set forth in this opinion.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

J. Edward Hollington
J. Edward Hollington & Associates, P.A.
Albuquerque, New Mexico

        *Attorney for the Plaintiff*

Brian Mumaugh
Holland & Hart, LLP
Greenwood Village, Colorado

-and-

Trent A. Howell
Jacqueline E. Davis
Holland & Hart, LLP
Santa Fe, New Mexico

    *Attorneys for the Defendant*